IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TWIN CITY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-0352 |
| | § | |
| KEY ENERGY SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Key Energy Services, Inc.'s ("Key Energy") Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support (Docket Entry No. 9).[1] For the reasons stated below, Key Energy's motion to dismiss will be granted, and this action will be transferred to the Western District of Texas.

**I. Background**

This dispute arises out of an excess financial products insurance policy ("the Excess Policy") issued by Twin City to Key Energy.[2] The Excess Policy provided up to $10 million in coverage

_____

[1]In response, Twin City filed an Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support (Docket Entry No. 18). Key Energy then filed a Reply Brief in Support of Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action (Docket Entry No. 19).

[2]See Complaint, Docket Entry No. 1, at ¶ 4.

for the period beginning at 12:01 a.m. on August 23, 2003, and ending at 12:01 a.m. on August 23, 2004.[3]  The Excess Policy provided coverage for losses incurred above and beyond the policy limits of two other underlying insurance policies.[4]  The primary underlying policy ("the Primary Policy") was issued by National Union Fire Insurance Company ("National Union"), and provided coverage in the amount of $10 million with a $1 million deductible.[5]  The secondary underlying policy ("the Secondary Policy") was issued by RLI Insurance Company ("RLI"), and provided coverage in the amount of $10 million in excess to the coverage provided by the Primary Policy.[6]  All three policies insured Key Energy and its directors and officers against, among other things,

---

[3]Id.   See also Excess Policy, Declarations, Items B-C (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit C to Exhibit 1).

[4]See Excess Policy, ¶ I.

[5]See Excess Policy, Declarations, Item D.   See also Primary Policy, Declarations, Items 3-4 (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit A to Exhibit 1).

[6]See Excess Policy, Endorsement No. 1.   See also Secondary Policy, Declarations, Items 3-4 (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit B to Exhibit 1).

liability and defense costs arising from certain types of lawsuits, including securities and shareholder derivative suits.[7]

Paragraph II.A of the Excess Policy provided that "liability for any loss shall attach to the Underwriters only after the Primary and Underlying Excess Insurers shall have duly admitted liability and shall have paid the full amount of their respective liability . . . ."[8]  Upon satisfaction of those conditions, "the Underwriters shall then be liable to pay only such additional amounts up to the [$10 million policy limit] . . . ."[9]

In 2004 Key Energy was sued in multiple securities class action and shareholder derivative suits in several forums, including federal court in the Western District of Texas, and in Texas state court in Midland County, Texas, and Harris County, Texas.[10]  In November of 2007 Key Energy entered into settlement agreements to conclude the securities class action and shareholder derivative suits.[11]  Under the settlement agreements, Key Energy

---

[7]Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support, Docket Entry No. 9, at 2.  See also Primary Policy, ¶ 1.

[8]Excess Policy, ¶ II.A.

[9]Id.

[10]Complaint, Docket Entry No. 1, ¶ 8; Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support, Docket Entry No. 9, at 3.

[11]Complaint, Docket Entry No. 1, ¶ 9; Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the
(continued...)

-3-

agreed to pay a combined sum of $16,625,000.[12]  Key Energy alleges
that it incurred an additional $5,289,424.56 in defense and
settlement costs, resulting in total expenses of $21,914,424.56.[13]

    Key Energy made a claim on the Primary Policy, and National
Union paid the full $10 million limit on the policy.[14]  Key Energy
also made a claim on the Secondary Policy, but RLI did not pay the
full $10 million limit on that policy.[15]  Instead, Key Energy and
RLI entered into a settlement agreement under which RLI agreed to
pay $9 million in exchange for Key Energy's release of RLI's
obligation to pay under the Secondary Policy.[16]

    Key Energy also filed a claim on the Excess Policy.  Key
Energy alleged that Twin City owed it $914,424.56 -- an amount
calculated by subtracting the $1 million deductible and the $20
million maximum coverage provided by the Primary and Secondary

---

[11](...continued)
Alternative, to Stay Action, and Brief in Support, Docket Entry
No. 9, at 3.

    [12]Defendant Key Energy Services, Inc.'s Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action, and
Brief in Support, Docket Entry No. 9, at 3.

    [13]Id. at 4.

    [14]Complaint, Docket Entry No. 1, ¶ 10; Defendant Key Energy
Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the
Alternative, to Stay Action, and Brief in Support, Docket Entry
No. 9, at 3-4.

    [15]Complaint, Docket Entry No. 1, ¶ 11; Defendant Key Energy
Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the
Alternative, to Stay Action, and Brief in Support, Docket Entry
No. 9, at 4.

    [16]Id.

-4-

Policies from Key Energy's total expenses of $21,914,424.56.[17]  Twin
City, however, refused to pay.[18]   Twin City asserted, and still
maintains, that coverage was not available under the Excess Policy
because RLI neither admitted liability nor paid the full amount of
its liability under the Secondary Policy.[19]

The  Excess  Policy  incorporated  by  reference  the  Primary
Policy,[20] which included an alternative dispute resolution ("ADR")
provision.[21]  Under the ADR provision, the parties were required to
attempt  to  settle  any  disputes  arising  from  the  policy  through
either  mediation  or  arbitration  before  resorting  to  traditional
litigation.[22]  Accordingly, Key Energy requested mediation in August
of 2008.[23]  The mediation took place in December of 2008, but the
parties were unable to reach a settlement.[24]

---

[17]Complaint, Docket Entry No. 1, ¶ 12; Defendant Key Energy
Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the
Alternative, to Stay Action, and Brief in Support, Docket Entry
No. 9, at 4.

[18]Complaint, Docket Entry No. 1, ¶ 13; Defendant Key Energy
Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the
Alternative, to Stay Action, and Brief in Support, Docket Entry
No. 9, at 4.

[19]Id.

[20]See Excess Policy, ¶ III.A.

[21]Primary Policy, ¶ 17.

[22]Id.

[23]Complaint, Docket Entry No. 1, ¶ 14; Defendant Key Energy
Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the
Alternative, to Stay Action, and Brief in Support, Docket Entry
No. 9, at 5.

[24]Defendant Key Energy Services, Inc.'s Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action, and
(continued...)

The ADR provision provided that if mediation was unsuccessful, either party could commence a judicial proceeding after 120 days had elapsed from the termination of the mediation.[25]  Twin City and Key Energy, however, agreed to shorten the 120-day waiting period to sixty-two days.[26]  Under the shortened waiting period, the first day that a suit could be filed was February 9, 2009.[27]

At 12:03 a.m. on February 9, 2009, Key Energy filed a petition in the District Court of Midland County, Texas ("the Midland Action").[28]  In its petition, Key Energy asserted a breach of

---

[24](...continued)
Brief in Support, Docket Entry No. 9, at 5; Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at 3.

[25]Primary Policy, ¶ 17.

[26]Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at 3 n.1; Letter from John M. Sylvester to Richard R. Johnson (Jan. 5, 2009) (documenting "the parties' agreement to shorten the waiting period . . . to 62 days from 120 days from termination of the mediation," and stating that "the first day that a party can file suit against the other is February 9, 2009") (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit H to Exhibit 1).

[27]Id.

[28]Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support, Docket Entry No. 9, at 5; Plaintiff Twin City
(continued...)

contract claim, alleging that it was entitled to recover at least $914,424.56 in unpaid settlement and defense costs arising from the class action and shareholder derivative actions under the Excess Policy.[29]  Key Energy also sought a declaratory judgment declaring, among other things, that Twin City was obligated to pay under the Excess Policy.[30]

Just over eight hours later -- at 8:16 a.m. on the same day, February 9, 2009 -- Twin City filed this action in federal court in the Southern District of Texas, Houston Division.[31]  In this action,

---

[28](...continued)
Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at 3 n.2; Petition, Key Energy Servs., Inc. v. Twin City Fire Ins. Co., No. CV46816 (D. Ct. Midland County, Tex. Feb. 9, 2009) (time stamped as filed at 12:03 a.m. on February 9, 2009) (included in Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support, Docket Entry No. 9, at Exhibit D).

[29]Petition, Key Energy Servs., Inc. v. Twin City Fire Ins. Co., No. CV46816, ¶¶ 32-35 (D. Ct. Midland County, Tex. Feb. 9, 2009).

[30]Id. ¶¶ 23-31.

[31]Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support, Docket Entry No. 9, at 5; Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at 3 n.2; Notice of Electronic Filing, Twin City Ins. Co. v. Key Energy Servs., Inc., No. 4:09-CV-352 (S.D. Tex. Mar. 12, 2009) (indicating that Twin City's Complaint (Docket Entry No. 1) was filed at 8:16 a.m. on February 9, 2009) (included in Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action, and Brief in Support, Docket Entry No. 9, at Exhibit E).

Twin City seeks a declaratory judgment that it is not liable to Key Energy for any amount under the Excess Policy.[32]   Twin City also asserts a claim for breach of contract, alleging that Key Energy breached several provisions of the Excess Policy and thereby caused Twin City to incur damages in the form of attorney's fees and other expenses in responding to Key Energy's claim and request for ADR.[33] Twin City alleges that it attempted to file its federal complaint soon after midnight on February 9, but because of difficulties with the court's electronic filing system, it was unable to file the complaint until 8:16 a.m.[34]

On March 12, 2009, Key Energy filed the pending Motion to Dismiss Plaintiff's Complaint, or in the Alternative, to Stay Action, and Brief in Support (Docket Entry No. 9).  Because of the similarity of the issues presented in the Midland Action, Key Energy asserted that the court was required to dismiss or stay this action pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283.[35]

---

[32]Complaint, Docket Entry No. 1, ¶¶ 18-22.

[33]Id. ¶¶ 15-17.

[34]Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at 3 n.2, 8; Affidavit of Jennifer Hornback (Apr. 1, 2009) (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit 2).

[35]The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act
(continued...)

Alternatively, Key Energy asserted that the court should exercise its discretion under the Declaratory Judgment Act and the Supreme Court's decision in <u>Brillhart v. Excess Insurance Company of America</u>, 62 S. Ct. 1173 (1942),[36] to dismiss or stay this action.

The next day, on March 13, 2009, Twin City removed the Midland Action to the federal district court in the Western District of Texas, Midland-Odessa Division.[37]  The Midland Action was designated as case number 7:09-CV-24, and was assigned to United States District Judge Robert Junell.[38]  On March 17, 2009, Twin City filed

---

[35](...continued)
of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

[36]In <u>Brillhart</u> the Supreme Court held that where a federal declaratory judgment suit and a state court suit "present[] the same issues, not governed by federal law, between the same parties," the federal court should decline to hear the declaratory judgment suit if "the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in state court."  <u>Brillhart</u>, 62 S. Ct. at 1176.

[37]Declaration of Richard R. Johnson, ¶ 7 (Apr. 1, 2009) (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit 1).  <u>See also</u> Defendant Twin City Fire Insurance Company's Notice of Removal of Action Under 28 U.S.C. Section 1441, <u>Key Energy Servs., Inc. v. Twin City Fire Ins. Co.</u>, No. 7:09-CV-24, Docket Entry No. 1 (W.D. Tex. Mar. 13, 2009) (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit F to Exhibit 1).

[38]<u>See</u> Docket Sheet, <u>Key Energy Servs., Inc. v. Twin City Fire Ins. Co.</u>, No. 7:09-CV-24 (W.D. Tex. June 1, 2009).  The court
(continued...)

in the Midland Action an Opposed Motion to Stay or Transfer Venue and Memorandum in Support.[39]  Twin City requested that Judge Junell transfer the Midland Action to the Southern District of Texas, Houston Division, or, alternatively, that he stay the Midland Action until this court has ruled on Twin City's pending motion for summary judgment.[40]  Twin City's motion to stay or transfer is still pending before Judge Junell.[41]

## II.  **Motion to Dismiss or Stay**

When Key Energy filed its motion to dismiss or stay this action the Midland Action was pending in state court.  Key Energy therefore invoked the Anti-Injunction Act and the <u>Brillhart</u> doctrine, which require federal courts to defer to state courts in certain situations.  Now that the Midland Action has been removed to federal court, the "standard for dismissal due to the pendency of a parallel federal proceeding rather than the stricter standard governing abstention due to the pendency of a related state court

---

[38](...continued)
obtained the Docket Sheet from the Midland Action through the Western District of Texas' electronic document filing system.

[39]Defendant Twin City Fire Insurance Company's Opposed Motion to Stay or Transfer Venue and Memorandum in Support, <u>Key Energy Servs., Inc. v. Twin City Fire Ins. Co.</u>, No. 7:09-CV-24, Docket Entry No. 11 (W.D. Tex. Mar. 17, 2009) (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit G to Exhibit 1).

[40]<u>Id.</u>

[41]<u>See</u> Docket Sheet, <u>Key Energy Servs., Inc. v. Twin City Fire Ins. Co.</u>, No. 7:09-CV-24 (W.D. Tex. June 1, 2009).

proceeding" governs the court's resolution of Key Energy's motion.[42]

Igloo Products Corp. v. The Mounties, Inc., 735 F. Supp. 214, 217

(S.D. Tex. 1990). Specifically, the "first-to-file rule" controls

in this situation.[43] See id.

## A.   The First-to-File Rule

The first-to-file rule is based on "principles of comity and

sound judicial administration." Save Power Ltd. v. Syntek Fin.

Corp., 121 F.3d 947, 950 (5th Cir. 1997). It "requires federal

district courts -- courts of coordinate jurisdiction and equal rank

-- to exercise care to avoid interference with each other's

affairs." West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751

F.2d 721, 728 (5th Cir. 1985).

"Under the first-to-file rule, when related cases are pending

before two federal courts, the court in which the case was last

filed may refuse to hear it if the issues raised by the cases

substantially overlap." Cadle Co. v. Whataburger of Alice, Inc.,

174 F.3d 599, 603 (5th Cir. 1999) (citing Save Power, 121 F.3d at

950; West Gulf Maritime, 751 F.2d at 728). The rule vests in the

---

[42]See Plaintiff Twin City Fire Insurance Company's Opposition
to Defendant Key Energy Services, Inc.'s Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action and
Memorandum in Support, Docket Entry No. 18, at 7; Defendant Key
Energy Services, Inc.'s Reply Brief in Support of Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action,
Docket Entry No. 19, at 3-4.

[43]The Igloo Products court referred to the rule as the "first-
filed rule," but the Fifth Circuit usually refers to the rule as
the "first-to-file rule." See, e.g., Cadle Co. v. Whataburger of
Alice, Inc., 174 F.3d 599, 603 (5th Cir. 1999).

court in which the first of the two related actions was filed the
responsibility of "determin[ing] whether subsequently filed cases
involving substantially similar issues should proceed." _Sutter_
_Corp. v. P & P Indus., Inc._, 125 F.3d 914, 920 (5th Cir. 1997).
Therefore, the second-filed court should usually stay, dismiss, or
transfer the action over which it is presiding in deference to the
first-filed court. _See_ _West Gulf Maritime_, 751 F.2d at 729 & n.1,
730.  This enables the court in which the first related action was
filed to "decide whether the second suit filed must be dismissed,
stayed or transferred and consolidated." _Sutter Corp._, 125 F.3d at
920.

    Twin City does not dispute that the issues presented in this
action "substantially overlap" with the issues presented in the
Midland Action.[44]  Indeed, both cases ultimately require the
resolution of whether Twin City is liable to Key Energy under the
Excess Policy.  Twin City does not contend that this action is the
first-filed action.  Twin City concedes that the Midland Action,
although not removed to federal court until after this action was
initiated, is the first-filed action based on the time Key Energy
filed its petition in state court.[45]  _See_ _Igloo Products_, 735

---

[44]_See_ Plaintiff Twin City Fire Insurance Company's Opposition
to Defendant Key Energy Services, Inc.'s Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action and
Memorandum in Support, Docket Entry No. 18, at 7-12.

[45]_See_ Plaintiff Twin City Fire Insurance Company's Opposition
to Defendant Key Energy Services, Inc.'s Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action and
Memorandum in Support, Docket Entry No. 18, at 7-8 & n.9.

F. Supp. at 217 (holding that for first-to-file rule purposes, "[t]he Court considers the date of filing in state court to be the relevant benchmark" for a federal action that has been removed from state court).  Accord Poche v. Geo-Ram, Inc., No. 96-1437, 1996 WL 371679, at *2 (E.D. La. July 2, 1996) ("Since Geo-Ram filed its suit in the Texas state court before Poche filed his suit here, the Court finds that the controversy was 'first-filed' in the Southern District of Texas.") (citing Igloo Products, 735 F. Supp. at 217). Twin City argues, however, that several "compelling circumstances" justify a departure from the first-to-file rule.

**B.   Compelling Circumstances**

In Mann Manufacturing, Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971), -- the Fifth Circuit's seminal first-to-file rule decision -- the Court of Appeals stated that the first-to-file rule should be followed "[i]n the absence of compelling circumstances." The court, however, did not provide any guidance or examples as to what sort of circumstances it would consider "compelling." See id. Twin City argues that several circumstances satisfy the "compelling" standard and that this court should not defer to the Western District of Texas.

1.   Twin City's Technical Difficulties and Minimal Time Difference in Filing

Twin City first asserts that because the parties had agreed that they could file suit on February 9, 2009, and that Twin City

-13-

only lost the veritable race to the courthouse due to technical difficulties with this court's electronic filing system, and even then that only eight hours separated the parties' filings, it would be unfair to force Twin City to proceed in Key Energy's preferred forum.

The court is not persuaded by Twin City's assertion that it was disadvantaged because it was unable to access the court's electronic filing system. Twin City included with its brief in opposition to Key Energy's motion to stay or transfer the affidavit of Jennifer Hornback, the legal secretary who attempted to file Twin City's complaint with the court soon after midnight on February 9, 2009.[46] Ms. Hornback stated in her affidavit that she first attempted to electronically file Twin City's complaint at 12:10 a.m. -- seven minutes after Key Energy's petition had been filed in state court.[47]   Therefore, even if Ms. Hornback had succeeded in electronically filing Twin City's complaint on her first attempt, this would still be the second-filed action.

Nor does the court conclude that the minimal difference in filing times justifies a deviation from the first-to-file rule. Other courts to consider such an argument have concluded that the

---

[46]See Affidavit of Jennifer Hornback (Apr. 1, 2009) (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit 2).

[47]Id.

first-to-file rule is no less applicable even when parallel suits are filed "almost simultaneously." See Eastman Med. Prods., Inc. v. E.R. Squibb & Sons, Inc., 199 F. Supp. 2d 590, 595 (N.D. Tex. 2002) (rejecting the defendant's argument that the first-to-file rule should not be adhered to because the two parallel federal court actions were filed "almost simultaneously"). Accord Sabre Inc. v. Northwest Airlines, Inc., No. 4:04-CV-612-Y, 2004 WL 2533867, at *3 (N.D. Tex. Nov. 8, 2004) (same) (citing Eastman Med. Prods., 199 F. Supp. 2d at 595). As Judge Lynn has explained, "[a]lthough the 'first to file' rule is pedestrian, its simplicity furthers comity between the courts and should not be casually ignored." Eastman Med. Prods., 199 F. Supp. 2d at 595.

2.   The Midland Action was Anticipatory

Twin City next argues that Key Energy filed the Midland Action in anticipation of being sued, and thereby engaged in forum shopping. As Twin City points out, several courts in the Fifth Circuit have concluded that an anticipatory suit initiated for the purpose of obtaining a favored forum constitutes a compelling circumstance that justifies a deviation from the first-to-file rule. See, e.g., Frank's Tong Serv., Inc. v. Grey Wolf Drilling Co., L.P., No. H-07-637, 2007 WL 5186798, at *4 (S.D. Tex. Sept. 11, 2007) ("[A]n anticipatory suit is also one of the compelling circumstances courts cite when declining to apply the first-filed rule."); Igloo Products, 735 F. Supp. at 217 ("[O]ne of

-15-

the special circumstances cited by courts that have declined to
apply the first-filed rule is an indication that the first-filed
suit was initiated in anticipation of the subsequent suit.").[48] The
court concludes, however, that such a compelling circumstance does
not exist in this case.

Twin City admits that it was attempting to file this action
shortly after midnight on February 9, 2009.[49]  In this case both
parties were literally racing to file in their preferred forum.
Both parties were attempting to file anticipatory suits.  Twin City
lost the race, and now argues that because it lost, it should

_____

[48]See also, e.g., Geo-Ram, 1996 WL 371679, at *2 ("Courts in
this circuit have consistently found that filing suit in
anticipation of being sued is grounds for setting aside the first-
filed rule."); Johnson Bros. Corp. v. Int'l Brotherhood of
Painters, 861 F. Supp. 28, 29 (M.D. La. 1994) ("'Compelling
circumstances' exist when a declaratory action is filed in
anticipation of another lawsuit in order to secure a more favorable
forum."); Merle Norman Cosmetics v. Martin, 705 F. Supp. 296, 298
(E.D. La. 1988) ("[A] complaint filed in anticipation of a
subsequent suit brought by the defendant to the first action can
avoid the operation of the first filed rule."). Cf. also Mission
Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 602 (5th Cir.
1983) (concluding that the district court "acted within its
discretion in considering the anticipatory nature of this [first-
filed declaratory judgment] suit" in deciding to dismiss it due to
the pendency of a second-filed, parallel suit in California state
court); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th
Cir. 1967) ("That Amerada's petition for declaratory judgment
apparently was in anticipation of the New York suit [wa]s an
equitable consideration which the district court was entitled to
take into account" when it decided to stay the first-filed
declaratory judgment suit due to the pendency of the second-filed,
parallel action in the Southern District of New York.).

[49]See Defendant Key Energy Services, Inc.'s Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action and
Memorandum in Support, Docket Entry No. 18, at 8, Exhibit 2.

receive its choice of forum. The court is not persuaded. Accepting Twin City's argument would essentially replace the first-to-file rule with the second-to-file rule in situations such as this where both parties have agreed that litigation can be initiated on a date certain and both file suit on that date in different forums. That would be an illogical and unworkable rule, and the court declines to follow it.

Furthermore, the primary reason courts have recognized the anticipatory suit exception to the first-to-file rule is to avoid penalizing a party that has attempted to settle a dispute out of court. See, e.g., Johnson Bros. Corp. v. Int'l Brotherhood of Painters, 861 F. Supp. 28, 29 (M.D. La. 1994) (invoking the anticipatory exception to the first-to-file rule because "[a]pplication of the 'first-filed' rule would penalize [the defendant in the first-filed action] for its efforts to settle this matter out of court"). An inequity justifying deviation from the first-to-file rule arises when Party A notifies Party B of a dispute in an effort to settle the dispute without initiating litigation only to have Party B rush to the courthouse to secure its desired forum in the event that settlement discussions fail. That is not the situation in this case. The parties in this case had already engaged in ADR and had reached an impasse before either this action or the Midland Action was initiated. Neither party was taken by surprise or penalized for engaging in the ADR process. Both parties knew that suits would be filed after the expiration of

-17-

the sixty-two day waiting period and both had an equal opportunity to secure their desired forum.  Accordingly, the anticipatory exception to the first-to-file rule is not applicable in this case.

>    3.   <u>Transfer of Venue Factors</u>

Twin City next contends that the court should look "to the considerations that govern transfer of venue for forum non conveniens under 28 U.S.C. § 1404(a)" to determine whether compelling circumstances justifying departure from the first-to-file rule are present in this case.[50]  <u>Igloo Products</u>, 735 F. Supp. at 218 (citing <u>Superior Savings Ass'n v. Bank of Dallas</u>, 705 F. Supp. 326, 330-31 (N.D. Tex. 1989); <u>Merle Norman Cosmetics v. Martin</u>, 705 F. Supp. 296, 298-301 (E.D. La. 1988)).  The court declines to do so in this case.

Currently pending before the Western District of Texas in the Midland Action is Twin City's Opposed Motion to Stay or Transfer Venue.[51]  In that motion Twin City asserts that the Midland Action should be transferred to the Southern District of Texas pursuant to

---

[50]28 U.S.C. § 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[51]<u>See</u> Defendant Twin City Fire Insurance Company's Opposed Motion to Stay or Transfer Venue and Memorandum in Support, <u>Key Energy Servs., Inc. v. Twin City Fire Ins. Co.</u>, No. 7:09-CV-24, Docket Entry No. 11 (W.D. Tex. Mar. 17, 2009) (included in Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at Exhibit G to Exhibit 1).

28 U.S.C. § 1404(a).[52]  Therefore, in order to rule on that motion,
Judge Junell will have to evaluate the same considerations that
Twin City is asking this court to evaluate.  A primary purpose of
the first-to-file rule is "to avoid rulings which may trench upon
the authority of sister courts . . . ."  West Gulf Maritime, 751
F.2d at 729.  If this court were to evaluate the § 1404(a) factors,
i.e., make a determination as to whether "the convenience of
parties and witnesses" and "the interest of justice" favors venue
in Houston, 28 U.S.C. § 1404(a), this court would find itself doing
exactly what the first-to-file rule is designed to avoid.

Moreover, the Fifth Circuit explained in Sutter Corp. --
decided seven years after Igloo Products -- that "the 'first-to-
file rule' not only determines which court may decide the merits of
substantially similar cases, but also establishes which court may
decide whether the second suit filed must be dismissed, stayed or
transferred and consolidated."  Sutter Corp., 125 F.3d at 920
(emphasis added).  Thus, the Fifth Circuit made clear that it is
the first-filed court, not this court, that should make the
§ 1404(a) determination.

4.  Relative Progress in Each Action

Twin City also contends that the court should consider "how
much progress has been made in the two actions" in deciding whether
or not to follow the first-to-file rule.  Stewart v. Western

---

[52]See id.

Heritage Ins. Co., 438 F.3d 488, 492 (5th Cir. 2006) (quoting
Murphy v. Uncle Ben's, Inc., 168 F.3d 734, 738 (5th Cir. 1999)).
The Stewart case relied on by Twin City for this proposition,
however, is not a first-to-file case, but instead involves Colorado
River abstention, which applies when a federal court considers
whether to stay an action in deference to a parallel action in
state court.  See Stewart, 438 F.3d at 491.  See also Colorado
River Water Conservation Dist. v. United States, 96 S. Ct. 1236,
1244 (1976).  Moreover, as Key Energy points out, the Midland
Action has actually progressed further than this action.  In the
Midland Action, Judge Junell has entered a scheduling order,[53] Twin
City has filed an answer,[54] and the pleadings are now closed.[55]  In
this case, no answer has been filed and no scheduling order has
been entered.  Therefore, to the extent that the relative progress

---

[53]See Scheduling Order, Key Energy Servs., Inc. v. Twin City
Fire Ins. Co., No. 7:09-CV-24, Docket Entry No. 14 (W.D. Tex.
Mar. 25, 2009) (included in Defendant Key Energy Services, Inc.'s
Reply Brief in Support of Motion to Dismiss Plaintiff's Complaint
or, in the Alternative, to Stay Action, Docket Entry No. 19, at
Exhibit 7).

[54]See Docket Sheet, Key Energy Servs., Inc. v. Twin City Fire
Ins. Co., No. 7:09-CV-24 (W.D. Tex. June 1, 2009) (listing Twin
City's Original Answer as Docket Entry No. 10).

[55]See Scheduling Order, Key Energy Servs., Inc. v. Twin City
Fire Ins. Co., No. 7:09-CV-24, Docket Entry No. 14 (W.D. Tex.
Mar. 25, 2009) (setting deadline for motions for leave to amend or
supplement pleadings as May 18, 2009) (included in Defendant Key
Energy Services, Inc.'s Reply Brief in Support of Motion to Dismiss
Plaintiff's Complaint or, in the Alternative, to Stay Action,
Docket Entry No. 19, at Exhibit 7).

of each action is relevant to the court's decision to follow the first-to-file rule, it favors following the rule.

### 5.  Piecemeal Litigation

Lastly, Twin City asserts that "given the presence of Twin City's breach of contract action, dismissing Twin City's declaratory relief action would actually create the very piecemeal litigation that the first-to-file rule was designed to avoid."[56] Twin City is correct that one of the purposes of the first-to-file rule is to "avoid piecemeal resolution of issues that call for a uniform result." West Gulf Maritime, 751 F.2d at 729. The applicability of the first-to-file rule, however, is not limited only to declaratory judgment claims. See, e.g., Whataburger of Alice, 174 F.3d at 602-06 (holding that the district court correctly concluded that the first-to-file rule applied to the plaintiff's second-filed RICO and state law tort claims). Therefore, this court will not dismiss or transfer only Twin City's declaratory judgment claim. The court will instead transfer the entire action to the Western District of Texas.

### C.  Conclusion

The parties' dispute has spawned two parallel federal actions. Because this action was initiated after the Midland Action, the

---

[56]Plaintiff Twin City Fire Insurance Company's Opposition to Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Action and Memorandum in Support, Docket Entry No. 18, at 11.

first-to-file rule provides that this court should be the one to defer.  Accordingly, the court will transfer this action to the Western District of Texas.  See Whataburger of Alice, 174 F.3d at 606 ("[O]nce the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court . . . .").

### III.  Order

Based on the foregoing analysis, Defendant Key Energy Services, Inc.'s Motion to Dismiss Plaintiff's Complaint (Docket Entry No. 9) is **GRANTED**.  This action is **TRANSFERRED** to the Midland-Odessa Division of the United States District Court for the Western District of Texas.

**SIGNED** at Houston, Texas, on this the 2nd day of June, 2009.

---

SIM LAKE
UNITED STATES DISTRICT JUDGE

-22-